JOHN FELLOWS, APP'T v. SIMEON B. LITTLE, ADM'R, APP'LEE.

Where entries or charges, on the books of a deceased parent, of property delivered to his children, are made in such manner and under such circumstances, as reasonably to exclude the idea of a debt or present gift, they become evidence that they were intended as *advancements*, to be taken into account in the final settlement of his estate.

Where things given by an intestate father to his children were such as were needed by them on their starting in life, and were calculated to aid and advance them in obtaining their education or living, there being nothing to show they were not entered as advancements, it was *held* they must be so considered.

The evidence is to be derived from the original entries on the books, and is not to be controlled by any subsequent parol declarations, showing the original intention of the party making such entries to be different from that represented by the books.

IN this case the parties agree upon the following statement of facts :

Hezekiah Fellows, the intestate, died in 1861, leaving a widow and four children and heirs-at-law, to wit : John, this app't, aged 46 ; Catherine Gleason, 41 ; George, 37 ; and Salome McCurdy, 34 years. George has since died, leaving a widow and children.

On the settlement of the administrator's account in the probate court, July 28, 1863, there was found in his hands for distribution, a balance of $2364.74, and it was then decreed and ordered by said court that the same should be distributed and paid over as hereinafter stated.

In determining the distribution, John, the app't, was held accountable for $961.93 ; Catherine for $171.12 ; George for $452.00, and Salome for $42.00, as the amounts of advancements received by them respectively in the lifetime of their father. And the probate court made the distribution as follows :

| | |
|---|---|
| Balance, | $2364.74 |
| 1-3 to widow, | 788.24 2-3 |
| | $1576.49 1-3 |

This appellant being held accountable for the amount before stated as

advancement, no part of this sum was allowed him, but the same was distributed among the other children, thus :

|  |  |  |
|---|---|---|
|  |  | $1576.49 1-3 |
| Advancement to Catherine, |  | 171.12 |
| "    " George, |  | 452.00 |
| "    " Salome, |  | 42.00 |
|  |  | $2241.61 1-3 |
| 1-3 is | $747.20 1-3 |  |
|  | 171.12 |  |
| Catherine's share, |  | 576.08 1-3 |
|  | 747.20 1-3 |  |
|  | 452.00 |  |
| George's share, |  | 295.20 1-3 |
|  | 747.20 1-3 |  |
|  | 42.00 |  |
| Salome's share, |  | 705.20 1-3 |
|  |  | $1576.49 |

The amounts for which the heirs were held accountable as advancements as aforesaid were entries found upon leaves fastened in the back side of a book containing only records of the intestate as a justice of the peace, with some leaves fastened in the front side containing some accounts. Those entries were mostly in the hand-writing of the intestate. They are all which appear in the book relating to this matter. Either party may refer to the book as part of the case.

The intestate was a trader, and as such, kept regular books of accounts. In those books were other charges against this appellant not included in the above entries reckoned as advancements.

It is admitted that these entries were made by the intestate, or by his order, as they purport. The administrator proposes, if admissible, to offer the testimony of witnesses to show that the intestate, in his lifetime was a justice of the peace and frequently acted as executor and administrator, and was familiar with the probate laws of the State—that he had shown these charges to various persons as the evidence of advancements made by him to his children, and on several . occasions, after he became old and infirm, directed others to make entries in these accounts, stating to them that he wished them made for the purpose of showing that the articles charged were advancements made to the children to whom they were charged, and frequently in his lifetime and from the time of the earliest entry in the accounts, declared his purpose in keeping the same to be to preserve evidence of the advancements he had made and was making to his children, in order that they might be taken into consideration in the distribution of his estate after his death, stating his purpose to be that each child should share equally in his estate, taking into consideration what each might have received in the way of advancements as shown by these accounts.

The appellant does not admit that any such evidence could be fur-

nished, but if the Court shall be of the opinion that such would be admissible, the parties are to have the right to take testimony on these points if they cannot agree as to facts.

*Minot & Mugridge,* for appellant.

I.   The entries referred to in the agreed statement of facts are not sufficient to prove advancements. The entries are charges against the several parties respectively, under " Dr." in the usual form of accounts.

Sec. 11, Chap. 166 of the Revised Statutes, provides that " no personal property delivered shall be deemed an advancement unless proved to be such by an acknowledgment in writing signed by the party receiving it or by some charge or memorandum thereof in writing made by the deceased, or by his order, or unless delivered expressly as an advancement," &c.

It seems clear that under this statute the acknowledgment, charge or memorandum, to be sufficient, must not only show the transfer of the property but also its transfer as " such "—i. e., an advancement.

No particular form of words is required by the statute, but they must be such as to show that an advancement was intended.—*Bulkeley* v. *Noble,* 2 Pick. 337.

Charges by a parent against a child in the usual form of accounts are not sufficient.   *Ashley, App't.,* 4 Pick. 21.   The form of the charges in that case was precisely the same as in the present case.

Claims in the character of debts and not supported as advancements by the evidence required by the statute, cannot be charged as advancements.   *Parker C. J. in Osgood, App't.,* 17 Mass. 358.   A note, therefore, is not evidence of an advancement.   *Barton* v. *Rice,* 22 Pick. 508.   And an account charged in the usual form of " Dr." as in this case, indicates indebtedness as fully as a note, and does not therefore prove an advancement any more than a note would.

The charge or memorandum, to be sufficient, must contain some expression showing an intended advancement.   But there is nothing in any of the entries in this case, or in the book in which they were made, to show any such intention.   They may have been, and very likely were, designed merely as a memoranda to show what expenses the intestate had incurred on account of his children, either as a matter of curiosity or to regulate his expenses on account of them.   And some of the entries, as those for " cash lent " in the account against George R. Fellows, negative the idea of gift as an advancement.

Money furnished by a parent for the education of a child will not be presumed to be an advancement without proof that such was the intention of the parent; for the education of a child is a parental duty. Nor is there such a presumption when security is taken from the child for the amount received, or where the parent preserves evidence of it as a debt, by note, bond, book account or otherwise.   *Miller's Appeal,* 4 Wright's (Penn.) Reports 57 ; see also *Riddle's Estate,* 7 Harris 431 ; Bacon's Abr. " *Executors*" *K*; Toller on Executors   The charges

against the appellant in this case are chiefly for the expenses of his education.

II.   The provisions of the Revised Statutes on this subject are not alterations of previous statutes, but only expressions of them in a more clear and precise form.   The true construction and meaning of sec. 5 of the statute of July 2, 1822—Laws of 1830, page 353—are the same as of the Revised Statutes.   See opinion of Perley J., in *Crowell* v. *Clough* 23 N. H., 207, which relates to the same statutes and to the preceding acts of 1822 and 1789 ; also, Parker J., in *Ashley, App't.*, 4 Pick. 24, and in *Sheffield* v. *Lovering*, 12 Mass. 492.

III.   The parol evidence proposed by the administrator to show that the charges referred to were intended as advancements, is inadmissible.

The Statutes provide what evidence shall be required to prove an advancement, and no other can be admitted.   *Bulkeley* v. *Noble* and *Barton* v. *Rice*, before cited.   The statutes of this State and of Massachusetts are substantially the same on the point in question ; and these decisions therefore are applicable to this case.

*Fowler & Chandler*, for appellee.

Appeal from the decree of the Judge of Probate for this county, distributing the estate of Hezekiah Fellows, late of Webster, deceased, intestate.   The case—with the book-making part of it—shows that the intestate, a trader, who kept regular books of account, died in 1861, leaving a widow and four children, John, Catherine, George and Salome —of whom, John, the appellant, was born in 1815, Catherine in 1820, George in 1824, and Salome in 1827 ; and that the deceased left, upon leaves securely fastened into the back side of his record book as justice of the peace, entirely separate, distinct, and disconnected from everything else, original memoranda of charges, in writing, of cash and other articles, made by him, or by his direction, in his lifetime, under the names of each of his four children.   These charges commenced in 1830, and were continued until 1860, a period of thirty years ; and there was nothing upon them, or in any way connected with them, tending to show that they were ever adjusted or designed to be adjusted by the deceased in his lifetime, or that any attempt was ever made to collect them or to do aught else than to carefully preserve them.   The charges against the appellant commenced in 1830, when he was only fifteen years old, and terminated in 1842, when he was about twenty-seven— more than half of them being made against him while a minor ; all the charges against Catherine were made in 1835, 6 and 7, when she was fifteen, sixteen and seventeen years of age ; those against George commenced in 1840, when he was sixteen years old, and ended in 1860, when he was thirty-six—nearly $200 of the $452 charged against him, however, being charged before the close of 1845 ; while no charges were made against Salome until after her marriage in 1852, at the age of twenty-five, and then they were made on the back side of a leaf containing charges against the appellant, against her under her maiden name of Salome Fellows, and were so continued for five years, until

1857. The abbreviation "Dr." or "D." follows the name at the head of the charges against each of the three elder children only, but all the entries are in the form of charges in account, though in some cases, without specific dates. The case further shows that the sum of the charges thus made against the appellant before the close of 1842, was larger in amount than one-fourth of the whole estate left by the deceased (after deducting the widow's share), with the amount of all the charges against all the children added thereto; and that from 1847 to 1857, while these charges were being made against other children, the appellant, instead of being charged any thing in these memoranda, was charged in the regular account books of the intestate with various items, similar to those before entered against him in these memoranda, amounting to $73.84, while no charges exist against any of the other children in those account books.

The case finds that the judge of probate held these memoranda to be charges of advancements to the several children, and decreed accordingly.

If admissible, the case finds that the appellee proposes to show by testimony, that the intestate was familiar with the laws of the State relating to the settlement of estates, having frequently acted as executor, administrator, &c., and also to show the acts and declarations of the intestate accompanying the making and exhibition by him of these charges, indicating beyond controversy that he made them solely to be preserved, and carefully preserved them as charges or memoranda of advancements made by him to his children, &c., &c.

Upon the agreed case two questions arise for the decision of the Court:

I. Was the judge of probate justified, upon the facts agreed in the case, in finding the charges against the appellant to have been intended as evidence of advancements made to him by his father in anticipation of his share of the father's estate? If not,

II. Is the evidence proposed to be offered by the appellee competent on the question whether these charges are to be regarded as evidence of advancements?

We respectfully insist that both questions can properly and rightfully be decided only in the affirmative, and submit the following propositions:

1. An advancement is the delivery, by the parent, during his life, to one or more of his children, of the whole or a portion of that to which the child or children would be entitled on a distribution of the estate after the parent's decease.

Equality is equity among heirs, and the doctrine of advancement has for its object the furtherance of this end, and hence provides an adjustment among the heirs, by way of set-off, in the distribution of the estate. *Sayles* v. *Baker*, 5 R. I. 457; *Law* v. *Smith*, 2 R. I. 252; *Cawthorne* v. *Coppege*, 1 Swan. (Tenn.) 487; *Miller's Appeal*, 31 Penn. 337; *Christy's Appeal*, 1 Grant's Cases (Penn.) 369; *Grattan* v. *Grattan*, 18 Ill. 167; *Weatherhead* v. *Field*, 26 Vt. 665; *Bulkeley* v. *Noble*, 2 Pick. 340; *Brown* v. *Brown*, 16 Vt. 204.

2.  What is or is not an advancement must always depend very much on the condition in life of the parties, and is absolutely fixed by the intention of the donor at the time, if that intention can be ascertained.  Questions of advancement are always questions of intention.  The intention of the parent, or other party making the advancement, is to govern.  *Johnson* v. *Belden*, 20 Conn. 322; *Youngblood* v. *Norton*, 1 Strobh. Eq. 122; *Riddle's Estate*, 19 Penn. (7 Harris) 431; *Weatherhead* v. *Field*, 26 Vt. 665, *Hartwell* v. *Rice*, 1 Gray 587. Generally money expended in the education of a child is not presumed to be an advancement, but if it appear that such was the intention of the parent it must be so regarded; the law will not condemn it. *Riddle's Estate*, 19 Penn. (7 Harris) 431.  If notes are taken for money advanced, the presumption is that a loan was intended, and not an advancement; but this presumption may be rebutted, and the question is for the jury.    *West* v. *Bolton*, 23 Geo. 531; *Vaden* v. *Hance*, 1 Head (Tenn.) 300.  So where the money or other articles are charged as if in account, the presumption is that the relation of debtor and creditor was intended to be created; but this presumption may be rebutted by the circumstances of the making and the character of the charges.  *Brown* v. *Brown*, 16 Vt. 207; *Law* v. *Smith*, 2 R. I. 244; *Weatherhead* v. *Field* 26 Vt. (3 Deane) 665.

4.   All the charges against the appellant were made prior to the adoption of the Revised Statutes, and, consequently, on general principles, are to be governed by the provisions of the act of July 2, 1822, in force at the time they were made.  *Helmore* v. *Shuter*, 2 Shower 16; S. C. *Gillmore* v. *Shooter*, 2 Mod. 310; *Couch* v. *Jeffries*, 4 Burr. 2460; *Williams* v. *Pritchard*, 4 D. & E. 2; *Whitman* v. *Hapgood*, 10 Mass. 437, which was, like the present, a case of advancements; *Merril* v. *Sherburne*, 1 N. H. 199; *Society* v. *Wheeler*, 2 Gallison 105; *Woart* v. *Winnick*, 3 N. H. 473; *Dow* v. *Norris*, 4 N. H. 16; *Dunbarton* v. *Franklin*, 19 N. H. 257; and see the various authorities as to retrospective laws collected in *Rich* v. *Flanders*, 39 N. H. 304.

The fifth section of that act provides " that if any heir of a person dying intestate, or any person through whom such heir claims, shall have had estate of such intestate in his lifetime, or shall have been advanced in settlement, such estate or advancement shall go towards the share of such heir, or in full thereof, as the case may be, according to its value.   And any deed of lands and tenements made for love or affection, or any personal estate delivered, which personal estate *shall have been charged in writing*, or of which *some memorandum shall have been* made by the intestate, or by his or her order, or which shall have been delivered expressly as an advancement, &c., &c., shall be deemed and taken to be in advancement of the share of such heir." The marginal abstract of the first clause we have quoted is in these words : " Any estate received by an heir of an intestate in his lifetime shall be in part or in full of the share of such heir." Laws of 1830, 353.

Under this statute, or those similar to it, questions have arisen in this State and elsewhere, whether other evidence of advancements than that

enumerated in the act could be received; and it has been almost uniformly held that it might—that advancements might be proved in other modes than those mentioned in the statute. *Comings* v. *Wellman*, 14 N. H. 287; *Scott* v. *Scott*, 1 Mass. 525; *Quarles* v. *Quarles* 4 Mass. 680; *Whitman* v. *Hapgood*, 10 Mass. 437; *Law* v. *Smith*, 2 R. I. 244; *Sayles* v. *Baker*, 5 R. I. 457; *Brown* v. *Brown*, 16 Vt. 197. Were it necessary, we should contend that under this statute it might be proved in any way, by satisfactory evidence, that the appellant had received estate of his father in his lifetime, which was intended by the father as an advancement, and if so proved, the estate received must be allowed in part or whole of the share of the appellant in the distribution of the estate of that father. But, as we understand the adjudged cases, we are not required to take that position. Whether the act of 1822 is to be construed, as it would seem the corresponding provisions of the Revised Statutes must be, as excluding other modes of proving advancements than those enumerated therein, or not, we submit that the judge of probate decided correctly, that the charges against the appellant were competent and satisfactory evidence of advancements to him by his father.

5. Under the statute no particular form of words is necessary in the charges or memoranda, all that is required being that the delivery of the money or other property be proved by charges or memoranda in writing so made by the father or his order, as to exclude the idea, of its being either an absolute gift or a debt in the ordinary acceptation of that term. The inference must be fairly drawn from the book or other memorandum itself, that an absolute gift or a debt was not intended. *Bulkeley* v. *Noble*, 2 Pick. 340; *Brown* v. *Brown*, 16 Vt. 204; *Law* v. *Smith*, 2 R. I. 244; *Weatherhead* v. *Field*, 26 Vt. 665.

In the present case we think it impossible for any one to examine the book, and the charges made and continued for a period of 30 years against children from the age of fifteen to thirty-six years, several of them manifestly intended only as advancements, totally separate and distinct from any and all other accounts and memoranda of the intestate, to see how carefully they were entered and preserved, to notice that there are no marks or other indications upon them showing that they were ever posted or settled, or that anything else was ever done or intended to be done with them except to preserve them, without being satisfied that these entries were not and could not have been designed by the intestate to show either an absolute gift by him to his respective children or an indebtedness of them respectively to him, or anything else but the sums by him advanced to them from time to time in anticipation of the distribution of his estate after his decease, and for which they were to account as part or the whole of their respective shares in such estate. If intended as a gift, they would not have been entered at all, or at all events the several children would not have been made "*Dr.*" for these charges; if intended as a debt, they would not have been entered distinct from everything else, against mere children, and continued thirty years without an adjustment, or preserved, as in the case of the appellant and Catherine, for more than a dozen years after they were barred by the

statute of limitations.   Then, too, the fact found by the case, that, after the appellant had received more than his full share of the estate, the father, who knew perfectly the amount of his estate, while making advancements to his other children, and entering them as such on these memoranda, charged, in his regular books of accounts, to the appellant as debts, various items, between 1847 and 1857, similar to those before entered on these memoranda, shows most conclusively that the entries on these memoranda were not regarded as charges of debts.   Moreover the case finds that there were fastened into the front side of the same book, leaves containing sundry accounts.   Upon inspection it will be seen that these were all accounts for the intestate's services as justice of the peace, town clerk, or in settling estates, and that there are upon all of them marks indicative of their settlement or transfer to the ledger, or other clear and decisive indications that they were regarded and treated as evidence of subsisting indebtedness, to be adjusted and paid ; while there is nothing of the kind upon these charges against the children upon the leaves in the back side of the book. ·

The cases of *Brown* v. *Brown*, 16 Vt. 204, and *Weatherhead* v. *Field*, 26 Vt. 665, were quite analogous to the present, but in neither did the charges present more clear and distinct evidence of an intended advancement than is here shown.   In *Brown* v. *Brown*, the charge was " property delivered," without more, made upon a memorandum book, not the intestate's regular book of accounts, and the court held the entry competent evidence of an advancement.   In *Weatherhead* v. *Field*, the entries were in the back part of an account book, and in the precise form of those in the present case, the children being made "*Dr.*" to the charges.   Upon an appeal from the probate court allowing charges thus made as advancements, Judge Collamer, upon an inspection of the book, without other evidence, affirmed the decree.   Exceptions were taken, and the full bench sustained his decision.   We refer the Court to the decision in that case as containing a very strong and conclusive argument applicable to the one now under consideration.

6.   If the charges are ambiguous and themselves do not indicate clearly the intention of the intestate in making and preserving them, it is competent to show the acts and declarations of the intestate accompanying the making and preservation of these charges, as throwing light upon that intention ; on the ground that such declarations and acts elucidate and give character to the charges,—are in fact part of the *res gestæ*.   The circumstances surrounding the principal fact may always be shown, if so connected with it as to illustrate its character.   Wherever evidence of an act done by a party is admissible, his declarations made at the time, tending to elucidate or give character to the act, and which may derive credit from the act itself, are admissible as part of the *res gestæ*.   *Hadley* v. *Carter*, 8 N. H. 40 ; *Sessions* v. *Little*, 9 N. H. 271 ; *Woods* v. *Banks*, 14 N. H. 101 ; *Mahurin* v. *Bellows*, 14 N. H. 212 ; *Tenney* v. *Evans*, 14 N. H. 343 ; *Newman* v. *Bean*, 21 N. H. 93 ; *Hobbs* v. *Cram*, 22 N. H. 134 ; *Plumer* v. *French*, 22 N. H. 450 ; *Johnson* v. *Elliott*, 26 N. H. 67.

NESMITH, J.    The material question is, whether, from the facts presented before us, the judge of probate for the county can be sustained in finding the charges made against the appellant by his father on his book, as competent evidence of an advancement made to him in anticipation of the son's share of his father's estate.

The question is to be determined upon a fair construction of our statute upon this subject, and upon the usages had elsewhere in cases where a similar statute law prevails.    Section 12 of chap. 176 Compiled Laws provides :    "That no personal property delivered shall be deemed an advancement, unless proved to be such by an acknowledgment in writing signed by the party receiving it, *or by some charge or memorandum thereof in writing made by the deceased or his order*, or unless delivered expressly as an advancement in the presence of two witnesses who were requested to take notice thereof."

The statute defines three distinct modes of making proof of an advancement.    The administrator of the estate of the deceased relies upon the second mode as indicated by the statute.    The charges on the father's book against the appellant were made prior to the adoption of the Revised Statutes, and may therefore be properly controlled by the provisions of the 5th section of the act of 1822, as revised by the Legislature of 1829, being in force when all the charges against the appellant were made.    Laws of 1830, page 353.    *Rich* v. *Flanders*, 39 N. H. 304.    The charges on the same book against some other children of the deceased were made subsequent to the passage of the Revised Statutes.

Although the act of 1822 before referred to might perhaps admit evidence of advancements in other modes, and different from those indicated by our present statute, as being more comprehensive in its terms ; yet, to avoid confusion, and because we think the same construction may be justly applied to that part of both statutes, explanatory of this case, we propose to test the case before us, by excluding any and all testimony, not deemed admissible by the law now in force which is applicable to the state of facts before us.

An advancement is briefly defined to be a free and irrevocable gift by a parent in his lifetime to his child on account of such child's share of the estate after the decease of the parent dying intestate.    No particular form of words is required by the statute to constitute an advancement, but the articles or money delivered must be so charged as not necessarily to imply the existence of a debt or an absolute gift, but rather to show the intention of the parent to have delivered the property, and made the charges *expressly* as advancements towards the child's future share of his father's estate.

Such we understand to be the fair, legitimate meaning of an advancement as interpreted by our statute law.    The memorandum of the property wherever and however made, the entries of the charges of property or money upon the book, must not show a debt to be collected or to be paid *in presenti*, nor an absolute unconditional gift, never more to be considered, but must be so entered as justly to convey the idea or knowledge to the parties interested, that there is intended to be a future adjustment and apportionment of the same charges or entries, upon the

settlement of the estate, as an advancement towards the final share of each child in the parent's estate. In the case before us, the father was Hezekiah Fellows, Esq., late of Webster, deceased. He kept a store for many years, and, of course, kept books, where his mercantile accounts and transactions were entered. The appellant, John Fellows, was the son. His father gave him an education, qualifying him for the medical profession. Mr. Fellows died intestate, leaving a widow and three other children. In the back part of a small memorandum book, which purported to contain entries showing the accounts of Esquire Fellows as justice of the peace, and as town clerk, administrator of some estates, and also of some few charges and settlements against his neighbors, were tacked in and fastened some sheets of paper, containing memoranda or charges in writing, of cash and other articles purporting to be delivered to each of his four children. The charges to the appellant commenced in 1830, and terminated in 1842. He was 15 years of age when they were commenced, and 27 years old when they terminated. The amount of the father's accounts against the appellant, up to July 1842, was $961.93. Then for five years there were no charges against the son. In 1847 we again find some goods charged to the son on his father's regular *store* books of accounts. Similar charges were made in 1851, '55, '56 and '57, amounting in the agregate to $73.84.

More than half of the amounts against said John were made while he was a minor. The aforesaid sheets of paper also contained charges against his daughter Catherine, of sundry articles delivered while she was a minor in 1835, 6 and 7, amounting to something less than $200 ; also to his son George, sundry charges of money and property, the whole amounting to $452.00, commencing in 1845, when he was 16 years old, and terminating in 1860, when he was 36.

No charges were made against his other daughter, Salome, until after her marriage in 1852, being then 25 years of age. During the term of five years after, and under her original maiden name of Salome Fellows, a few articles were entered upon the back of appellant's account, amounting in the whole to about $70.00. The abbreviation "*Dr.*" or "*D.*" follow the names of each of the three oldest children, but not the name of Salome.

From the facts of the case, it appears that the accounts against the several children were 30 years in accumulating. Nothing exists on the face of either to indicate any credit or settlement. The appellant's account far exceeded either, or all the others, in amount. The amount of the appellant's account was more than one-fourth of the whole estate of the deceased, after deducting the widow's share. The memorandum book was a part of the case. From its inspection, and a consideration of the aforesaid facts, we derive the following probable inferences or conclusions :

1. The aforesaid charges are not regarded as evidence of absolute gifts. If such had been the intention of the deceased, he would not have entered the charges with particularity, even if he entered them at all ; nor would he probably have placed the common mark or abbreviation of indebtedness against either child's name.

2.  The accounts do not bear on their face the internal evidence of present indebtedness.  They are not found upon the regular book of accounts of the deceased.  They are not posted or transferred to any ledger, as the other accounts of the deceased appear to have been.  Nearly half of the whole amount is charged to part of the children while minors, and without ability to pay.  There is nothing about the accounts tending to show that the deceased made any efforts to collect any portion of either account, after his children became of age.  The fact that they were originally entered on separate or distinct pieces of paper, shows that the deceased could not have designed the accounts for collection, nor with the expectation of payment.  On the contrary, the entries, as exhibited on the book of the intestate, are made in such a manner, and under such circumstances, as to exclude the idea that they were intended either as absolute donations, or as a present indebtedness, and they do carry with them strong intrinsic evidence that they were intended as advancements, and to be so treated upon the final settlement of his estate.

In making these charges, it appears to us that it was the purpose of the intelligent father, knowing his means, and in the exercise of a wise forecast, to so arrange his accounts as to enable his children that might survive him to obtain a final equal distribution of his estate.  This motive appears apparent to us from the fact that he prescribed a limit to the account of the appellant, after it had accumulated to $961.93, and that, from that period, whatever property the appellant had was charged to him in such a manner as to clearly indicate the expectation that he should pay the second book account as a just debt.

From this conduct of the father towards the son, we infer that he, upon a view of his own comparative means, and with a due regard to his ability to assist his other children, then desisted from making further advances to his son John, and for the special reason that he had already delivered to him what would prove to be equal, or more than equal to John's full share of his estate.  Our results on this question accord with the decision of the courts in Vermont, in cases involving a very similar state of facts.  *Brown* v. *Brown*, 16 Vt. 205 ; *Weatherhead* v. *Field*, 26 Vt. 665 ; also *Bulkeley* v. *Noble*, 2 Pick. 340.

The rule laid down in *Hollister* v. *Attmore*, 5 Jones Eq. Rep. N. C. 373, appears to be not unjust.  Where things given to his children by an intestate parent were such, as were needed on their starting in life, and were calculated to aid and advance them, there being nothing to show they were not intended as advancements, it was held they must be so construed.  *Wagner's Appeal*, 38 Penn. (2 Wright's Rep.) 122.

Generally, equality is equity among heirs, and the doctrine of advancements has for its object the furtherance of this end.  The intention of the parent is to govern and to be carried out.  *Miller's Appeal*, 31 Penn. 337.  Judge Lewis remarks truly in that case, that no person knows so well as a parent how equity and equality may be best effected.  In many families a judicious discrimination in favor of one child, or against another, may work the best equity.  The presumption is, that the parent makes these expenditures in the discharge of his parental du-

ties, and that all his children are treated with equality in this respect.
The taste, talents and constitution of one child may be of such a nature
as to induce the parent to make for him a larger proportion of his proper-
ty by anticipation, to advance him in the art or profession for which he
evinces peculiar qualifications.   This course might greatly promote his
interest and happiness, while similar benefits may be ultimately secured
to his other children by giving them in some other form their share of
the estate.

Questions of advancement are always questions of intention, and the
difficulties in solving them are generally found in the kind of evidence
by which such intention is to be proved.   In some cases it has been con-
sidered that this intention if not expressed shall be inferred as matter
of law.   Where the law, as in Massachusetts, requires this intention to
be expressed by the intestate in writing, it has been held that no subse-
quent parol declarations will control the original intentions of the party,
as represented by charges on books or entries upon memoranda, &c.
*Hatch* v. *Straight*, 3 Conn. 31; *Partridge* v. *Havens*, 10 Paige
Chan. 618; *Johnson* v. *Belden*, 20 Conn. 322; *Osgood* v. *Breed*,
17 Mass. 359, and the two aforesaid cases in Vt. Reports; *Barton* v.
*Rice*, 22 Pick. 508.

Our conclusion, therefore, is that the charges, as found in the appen-
dix of the book of the intestate, are justly to be regarded as proper evi-
dence of advancements made to the children of the deceased, equal to
their several respective amounts; and that no verbal evidence can be re-
ceived showing subsequent parol declarations of the intestate, tending to
control the evidence arising from the original entries in the book itself.
Therefore, upon consideration of the whole case, we affirm the decree or
judgment of the court of probate.