[No. 13762.  Department Two.  May 18, 1917.]

THE CITY OF HILLYARD, *on the Relation of W. V. Tanner,
Attorney General, Respondent,* v. JOHN A. CARABIN
*et al., Appellants.*[1]

MUNICIPAL CORPORATIONS—OFFICERS—MISAPPROPRIATION — ACTION
ON OFFICIAL BONDS—EVIDENCE—SUFFICIENCY. Where, in an action on
the official bond of a city treasurer to recover money lost through his
fraud, conspiracy, and forgery, it appears that he created the short-
age by illegally paying claims against the city in cash without war-
rants, in violation of Rem. & Bal. Code, § 7687, it is not necessary
to show the fraud and conspiracy or that the names signed to the
pay roll were forged names of men who did not work for the city.

SAME—OFFICERS—ACTION ON OFFICIAL BOND—DEFENSES. In such
a case, the issuance of warrants by the city council to relieve the
cash is of no consequence, since the council could not ratify the
treasurer's illegal act in paying cash.

SAME. That an auditing officer did not discover a shortage in the
annual accounts of a city treasurer, is no defense to an action on
the treasurer's official bond.

LIMITATION OF ACTIONS — AGAINST SURETY — ACTION ON WRITTEN
CONTRACT. An action on the official bond of a city treasurer to re-
cover a shortage is not an action upon contract within Rem. Code,
§ 159, subd. 3, of the statute of limitations, ·but is based on the wrong-
ful and illegal act of the principal.

SAME—ACTION ON BOND OF OFFICIAL—ACCRUAL—TERM OF OFFICE.
The statute of limitations starts to run against an action on the
official bond of the city treasurer at the end of the term of office in
which the cause of action arose, and not at the time of the different
misappropriations; and failure to discover the fraud ·does not toll
the statute, as provided by Rem. Code, § 159, subd. 4, for actions for
relief upon the ground of fraud.

COSTS—ON APPEAL. Upon modification of a judgment whereby
the appellants obtain a more favorable judgment than they secured
below, they are entitled to costs of the appeal.

Appeal from a judgment of the superior court for Spokane
county, Sullivan, J., entered November 30, 1915, upon find-
ings in favor of the plaintiff, in an action on an official bond,
tried to the court. Modified.

'Reported in 165 Pac. 381.

*Charles E. Swan* and *W. C. Donovan*, for appellants.

*The Attorney General, Scott Z. Henderson, Assistant,* and *C. C. Upton* (*L. L. Thompson, Assistant,* of counsel), for respondent.

HOLCOMB, J.—This action was brought on behalf of the city of Hillyard to recover from appellants, Carabin and Massachusetts Bonding and Insurance Company, the surety on his official bond, certain sums of money which the city claims to have lost by reason of alleged fraudulent acts committed by Carabin while acting as the city treasurer, together with his alleged co-conspirators, the city engineer and city clerk.

The record shows that, during Carabin's terms of office, a great many men were employed by the city in constructing a water system, and that, instead of paying these men by warrants, as provided by Rem. & Bal. Code, § 7687, they were paid in cash by Carabin when they presented a time certificate to him signed by the foreman of the works, at which time they signed a voucher for the same. During the first part of the work, this was the only record kept of these men. Later on payrolls were kept, but the men were still paid by cash instead of warrants. At the end of the month, a warrant to relieve cash would be issued to Carabin by order of the city council. Carabin would then take this warrant to the bank, where it would be cashed and the cash deposited to the credit of the city of Hillyard. The bank would hold the warrant until it was presented and paid. On April 1, 1913, Carabin, the city engineer, and the city clerk were charged with conspiracy, and later pleaded guilty to conspiring to defraud the city out of certain money by forging the names of fictitious persons on the payroll. The evidence of handwriting experts was introduced, also, tending to show that the names on the receipts, vouchers, and payroll were forged by Carabin, the city engineer, and the city clerk, it being respondent's theory that the alleged payees were fictitious

persons and that the moneys purported to have been paid to them were wrongfully retained by the conspirators.

From an adverse judgment in the sum of $4,015.93, defendants appeal, and urge that, since the gravamen of this action is fraud, in order for respondent to recover, it must establish by a preponderance of the evidence that Carabin was guilty of fraud as alleged, and also that the men whose names were alleged to have been forged to the payroll and vouchers were fictitious persons or had not worked for the city as pretended, and that such money was retained by Carabin and his co-conspirators.

In considering this question, the evidence shows that Carabin might have incurred a *prima facie* liability on the ground of illegally paying out the city's money, irrespective of the question of active fraud, for Rem. & Bal. Code, § 7687, specifically provides that all demands against cities of the third class shall be paid by warrants, which shall specify the purpose for which they are drawn. From this statute, it is apparent that the action of Carabin in paying claims against the city in cash without warrant was an illegal act. *McCormick v. Bay City*, 23 Mich. 457.

And it also created a shortage, as

"All district funds once in the hands of the town treasurer must in law be regarded as continuing in his official custody until lawfully drawn out. Payments made otherwise are made in his own wrong, and cannot diminish the fund for which he is responsible." *Burns v. Bender*, 36 Mich. 195.

See, also, *Seymour v. Ellensburg*, 81 Wash. 365, 142 Pac. 875.

By his illegal act, Carabin created a shortage in the fund of the city treasurer and illegally paid out the money of the city. Because of these facts, we do not think that, in order to recover in this action, respondent must show also the manner of the misappropriation, which in this case would be impossible, for respondent could not show that men whose names were signed to the payroll and time certificates did not work for

the city at the time the cash was paid out.   By ostensibly
paying out the money, but in a wrongful manner, Carabin ren-
dered it impossible for respondent to make this proof; and to
now hold that respondent must so do would be to render inef-
fective the statute which requires that claims against the city
must be paid by warrants, and place a premium upon its vio-
lation.   Nor is the issuance of a warrant by the council to
relieve the cash of any consequence, inasmuch as the council
itself could not pay the city's current indebtedness by cash,
and could not ratify Carabin's illegal act in so doing.

As it was not necessary for respondent to show that these
men whose names were signed to the payroll did not work for
the city of Hillyard, by showing that the money was illegally
paid out, together with the evidence of fraud on the part of
Carabin, respondent established a case which, if believed,
would render Carabin liable for the shortage; and the evi-
dence of fraud is sufficient, in our minds, to show that the
shortage shown was misappropriated by Carabin.

In their original answers, by way of affirmative defense,
appellants pleaded that Carabin's books were examined during
the years 1910, 1911, and 1912, by officers of the state; that
no report of these shortages was ever made; that the bond was
executed in reliance upon such examinations, and that conse-
quently appellants were discharged from liability.   The action
of the lower court in sustaining the demurrer to these de-
fenses is next assigned as error.   No authority is cited to sus-
tain this contention, nor are we able to find any.   On the other
hand, the rule seems to be well settled that the failure of an
auditing officer to discover a shortage in the accounts of an-
other officer does not relieve the latter or his bond from lia-
bility.  *Anderson v. Blair,* 121 Ga. 120, 48 S. E. 951, 2 Ann.
Cas. 165.   That the auditing officers were incompetent or
negligent in their examinations at those times is established
by the facts.   But the failure of such officers, whose examina-
tions and reports are not conclusive, cannot be binding upon
either the officer or the public he serves.   The *bureau of*

inspection assuredly has no power to discharge an official from liability.

This action was commenced in June, 1914, and it is appellants' contention that all transactions which occurred prior to March, 1911, the date of the expiration of Carabin's first term as city treasurer, are barred by the statute of limitations. While it is true this is an action against a bond, it is not an action on a written contract, as the basis of the action is the wrongful and illegal act of the principal, upon which the liability of the surety is dependent. *Board of Com'rs of Graham County v. Van Slyck*, 52 Kan. 622, 35 Pac. 299. Appellants, therefore, urge that this action comes within the provisions of Rem. Code, § 159, subd. 3, which provides that actions on unwritten contracts must be brought within three years, and this theory would seem to be well founded, unless respondent's contention that, since this is an action for relief on the ground of fraud, the statute does not commence to run till the fraud is discovered, as provided in subd. 4, § 159, Rem. Code, is meritorious. However, in a case of this kind, whether or not the relief asked for is based on fraud which has not been discovered, the rule is well established by this court that the statute starts to run at the end of the term of office within which the cause of action arose. *Spokane County v. Prescott*, 19 Wash. 418, 53 Pac. 661, 67 Am. St. 733; *Skagit County v. American Bonding Co.*, 59 Wash. 1, 109 Pac. 197.

In the latter case the court said:

"It should rather be held that, for the purposes of the statute of limitations, all causes of action matured at the expiration of his term, for defalcations during such term, without reference to the several dates on which they occurred, and that as between the county on one part, and the delinquent officer on the other, the period of limitation would not commence to run prior to the expiration of his term."

Subsequently, in that case, it is determined that the statute does not start to run at the times the different misappropriations were made, when they were not discovered at such times,

and respondent therefore argues that the statute does not run till such discoveries are made. But this case plainly places a limit, viz., the end of the term of office, when the statute does in any event start to run, and the failure to discover the fraud cannot stop the toll of the statute after that time. It was, therefore, error for the court to allow a recovery for items misappropriated prior to January, 1911, the end of Carabin's first term of office. Their recovery is barred by the statute of limitations.

Several other assignments of error are urged based on the admission and refusal to strike certain evidence. It is sufficient to say that we have considered these assignments and do not deem them of sufficient merit to warrant a reversal.

The judgment of $4,015.93, which was computed by adding together the sums of $3,171.07, as principal, and $844.86, interest to November 30, 1915, the date of the judgment below, must be, and is, modified by eliminating the items of loss caused by defalcations prior to January, 1911, amounting to $1,636.80, principal, and $521.33, interest to November 30, 1915. The remaining defalcations, amounting to $1,534.27, principal, and $323.53, interest to November 30, 1915, totaling $1,857.80, are recoverable, and as to them the judgment is affirmed. In making these deductions we are not unmindful of the fact that some deductions were made from these items by the trial court; but in so far as this is ascertainable from the record, none of them were made for defalcations in 1910. To $1,857.80 should also be added the sum of $723.81, being the sum of $608.95 with interest to November 30, 1915, which amount the trial court found to be due respondent, but inadvertently failed to include it in the judgment. Appellants, having obtained a more favorable judgment here than they secured below, will recover costs of this appeal. Let the judgment be modified and ordered accordingly for the sum of $2,581.61, with trial costs.

Ellis, C. J., Fullerton, Mount, and Parker, JJ., concur.