419 P.2d 671

Maurine W. HIRNING, an heir to Mary D.
Webb, deceased, Appellant-Appellant,

v.

Edward M. WEBB, Jr., Administrator Estate
of Mary D. Webb, Jonathan Webb, Francis
Webb, LaRie Underwood, Robert G. Webb,
Dorothy L. Webb, Administratrix Estate of
Van R. Webb, deceased, Respondents-Re-
spondents.

No. 9826.

Supreme Court of Idaho.

Nov. 1, 1966.

Kerr & Williams, Blackfoot, for appel-
lant.

Furchner, Anderson & Beebe, Blackfoot,
for respondents.

McFADDEN, Chief Justice.

An order in the estate of Mary D. Webb,
deceased, who died intestate June 2, 1962, is
the subject of this appeal. During her life-
time she was married to Edward M. Webb,
Sr., who died intestate January 22, 1961.
Born issue of their marriage were eight
children, seven of whom lived to maturity,
i. e., Maurine W. Hirning, appellant, and
respondents Edward M. Webb, Jr., who is

the administrator of Mrs. Webb's estate, Jonathan Webb, Francis Webb, LaRie Underwood, Robert G. Webb and Van R. Webb, deceased, whose administratrix is also a respondent.

Mrs. Webb succeeded to her deceased husband's interest in their community property, which property is involved in these proceedings.

Edward M. Webb, Jr., the administrator, filed his first account and petition for partial distribution of the estate. Following the hearing for settlement of the first account and the petition for partial distribution, the probate court entered its order approving the first account and its order and decree authorizing partial distribution of the estate in accord with the administrator's petition. Mrs. Hirning appealed to the district court from this order and decree. The district court heard the cause anew and entered its order affirming the probate court's order and decree, from which this appeal has been taken.

The principal issues presented involve whether the transfer of 160 acres of land to Mrs. Hirning by her parents on August 26, 1955, was a gift or an advancement against her distributive share of the estate, and also whether the sum of $7,000.00 paid in March 1944 by her father to a third party was in the nature of a loan, a gift, or an advancement and whether it too should be charged against her distributive share.

The facts presented by the record are without dispute. In March 1944 appellant's father wrote a check to a third party for $7,000.00 as payment on land appellant and her husband were then purchasing. For a number of years thereafter and up until about 1951 she and her husband annually paid to her parents 5% interest on this sum. No interest payments were made after 1951.

In 1955 Mr. and Mrs. Webb executed and delivered four separate gift deeds, each conveying 160 acres of "desert ground." Three of these deeds were executed August 26, 1955, and were delivered to LaRie Underwood, Van R. Webb, and Maurine

Hirning. The other deed was executed on December 16, 1955, and delivered to Robert G. Webb.

There were several other transactions whereby the parents transferred both real and personal property to some of their children.

Sometime after their mother's death, appellant and the respondents met in an attorney's office. A discussion was had as to the valuation to be placed on the various lands conveyed to the children; it was agreed by the respondents that the various transfers by their parents to the heirs should be treated as advancements against their respective interests in their mother's estate. This agreement, however, was apparently conditioned upon the probate court's entering its decree treating all of the transactions as advancements, including the loan of $7,000.00 to appellant and the deed of the 160-acre tract to her. No written evidence of such agreement was submitted. Appellant denied she ever acknowledged in writing that either the $7,000.00 or the gift deed to the tract was an advancement or that she concurred in such an agreement. She stated that at that meeting, "Well, I had to agree, I was out-voted." She stated further, "Well, they were all telling me what I had coming and what I had already got, and I was just one among six, so what could I do." She later denied that she concurred in such agreement.

The trial court in its order affirming the probate court's order found as a fact that appellant had acknowledged the loan of $7,000.00 and such sum had not been repaid. This finding is fully sustained by the record. While appellant contends that this payment of $7,000.00 was a voluntary payment by her father to her creditors as a gift and should not be treated as an advancement or as a setoff against her inheritance, yet in her testimony she admitted it was a loan. She also contends that if this was in fact a loan, the statute of limitations (I.C. § 5–201) should be applied as a bar against the contention of the

administrator that this should be treated as a setoff.

Respondents contend that I.C. § 5–201 is a statute of repose and does not extinguish the debt but only bars the remedy, and thus does not bar a defense or counterclaim based on such debt. It is recognized that there is a decided division of opinion in the decisions from our sister states on this issue. See: Annotations: 1 A.L.R. 1007; 30 A.L.R. 778; 75 A.L.R. 880; 110 A.L.R. 1385; 174 A.L.R. 726; 39 A.L.R.2d 676.

"Generally proceeding, at least in part, on the theory that the local statute of limitations bars only the right of action and does not extinguish the debt itself, and that it therefore does not preclude the creditor from appropriating to the payment of the debt such property of the debtor as comes into his hands, the following cases support the proposition that the personal representative has the right to apply the statute-barred indebtedness to the debtor's legacy or distributive share: (citations from 19 states and England)." 39 A.L.R.2d 677.

"A large proportion of these decisions have been based, at least in part, on the reasoning that since the statute-barred debt could not have been collected by direct action, the personal representative would not be permitted to achieve the same result by retaining the amount of the debt from the debtor's legacy or distributive share. (referring to decisions from 14 other jurisdictions)" 39 A.L.R.2d 682.

Under the law in Idaho, the respondents' contention is the more logical. Idaho has aligned itself with other jurisdictions which consider that a statute of limitations is one of repose, i. e., that the lapse of the statutory period bars the remedy to enforce the debt but does not extinguish the debt. Billings v. Sisters of Mercy of Idaho, 86 Idaho 485, 389 P.2d 224; Despain v. Despain, 78 Idaho 185, 300 P.2d 500; Trusty v. Ray, 73 Idaho 232, 249 P.2d 814; Miller v. Monroe, 50 Idaho 726, 300 P. 362.

In Kelson v. Ahlborn, 87 Idaho 519, 393 P.2d 578, this court was presented with the issue of whether a defendant's cross-demand, arising from the same transaction as the plaintiff's original claim, could be set off against the plaintiff's claim even though affirmative relief on the cross-claims was barred by the statute of limitations. This court held that such cross-demands, although barred as the basis for affirmative relief, could be set off against the plaintiff's claim.

At 34 C.J.S. Executors and Administrators § 494, p. 390, it is stated:

"As a general rule, an executor or administrator has the right to and should retain from a legacy or distributive share the amount of any indebtedness which may be due to the estate by the legatee or distributee, * * *."

"The right of retainer of the amount of an indebtedness from a legacy or distributive share is not a set-off, although it is sometimes termed such, but is an exercise of the right of the representative to apply the funds in his hand to the payment of a debt due from the legatee or distributee to the estate. It is a right of an equitable nature, and not dependent on any statute, constitutes an equitable lien, and is based on the equitable principle that the indebtedness of the legatee or distributee constitutes a part of the assets out of which his and other legacies or distributive shares are to be paid, and that therefore it would be inequitable for him to receive his legacy or distributive share while he retains such part of the assets." 34 C.J.S., p. 393.

"In some states, the application of the doctrine of retainer is not affected by the fact that the estate's claim against the legatee or distributee is barred by the statute of limitations, unless there is a contrary testamentary expression of intention; and this rule has been held to apply where the legatee or distributee is executor or administrator." 34 C.J.S., p. 394.

21 Am.Jur. Executors and Administrators § 457, p. 637, states:

"The cases are in conflict upon the question whether there is a right of retainer in respect of debts which have become barred by the statute of limitations. Although there is some authority to the contrary, the weight of authority is to the effect that the amount of the statute-barred debt may be applied by the executor, or administrator, in satisfaction of the debtor's legacy, or distributive share. This is upon the theory that the statute of limitations bars only the right of action, and not the debt itself, and therefore that where property of the debtor comes into the hands of the creditor, the statute does not preclude his appropriating such property to the payment of the debt."

█ While recognizing this division of authority, it is our conclusion, based on previous rulings of this court, that the trial court correctly determined that the $7,000.-00, admitted by appellant to have been a loan, was properly charged against her distributive share of the estate.

The next contention is that the trial court was in error in determining that the deed of the 160 acres to appellant in 1955 was an "advancement" and is to be charged against any distributive share to which she might be entitled.

There was admitted into evidence a copy of the deed conveying this real property to appellant. Copies of the deeds conveying 160 acres to the other three children were also admitted, over appellant's objection. In addition, exhibits 7, 8, 9 and 10 were admitted into evidence, over appellant's objection, which exhibits respondents contend show that there was an advancement of this property to the appellant, and which exhibits respondents contend reflect a common plan of the deceased parents equally to distribute their property among all the children. These exhibits, all in Mrs. Webb's handwriting, were: Exhibit 7, a "D. E. Ledger"; Exhibit 8, "Sterling 6 Column Book"; Exhibit 9, "Farm-Ranch Bookkeeping & Tax Record." All of them contained various entries.

Exhibit 7 consists of 46 pages, plus index pages. On page 10 appears:

"Loaned Erich Hirning [husband of appellant] 1944 March 10 To Joe Stewart on land $7,000 Aug 26 We made a gift deed to Maurine for ¼ Sect of land N.W. ¼ Sec 9 at $75 per acre value She is to give us a note for what they owe us."

On page 11 thereof the interest payments made by Erich Hirning are set out. On page 15 appears:

"Vans Account [Van R. Webb, the deceased son] On Aug 26 we made a gift deed to Van for SW ¼ of Section 9 at $75 per acre value. He does not owe us anything."

On page 20 appears:

"Aug 26, 1955. We gave LaRie a gift deed for the NE ¼ of Section 9. Valued at $75 per acre. They are to give us a note on the other they owe us also machinery we let them have."

Exhibit 8 consists of numerous entries pertaining to transactions between Mr. and Mrs. Webb and their children. A number of the entries were copied from Exhibit 7.

Exhibit 9 is an account book pertaining to transactions for the calendar year of 1961. On page 4 appears this entry:

"Sold Mike [i. e., Francis Webb] the home. May 6, 1961 $18000 and his part of the estate."

On page 8 appears:

"June 17–61 paid from estate to Edward Webb, Jr. His first payment from the estate. $3000."

In Exhibit 8 there appears on page 6 the following, which entry is in conformity with that on page 8 of Exhibit 9:

"Up to Jan. 1, 1958, Edward Milo Jr. has not received anything.

June 17. I gave him a check for $3,000."

Both entries quoted from Exhibit 9 were made subsequent to the death of Edward M. Webb, Sr. No other entries in Exhibit 9 reflect any intent that a charge should be made against any other child's share of the estate.

Respondents' Exhibit 10 is a magazine wrapper upon which appear pencil notations testified to as having been written by Mr. Webb, Sr., which notations reflect valuations on certain real property and the amounts given to "Van," "Maurine," "LaRie," and "Bob," the four children who each received a 160-acre tract of land.

Following the death of their mother, the children agreed that the valuations placed on the land given to the four children should have been computed at the rate of $50.00 per acre, instead of $75.00 per acre, as was indicated to be the value the parents placed on the land transferred by the gift deeds. In its order the probate court used the $50.00 figure in establishing the value.

The trial court in its order affirming the probate court recited:

"The deeds were made to the four children at the same time clearly indicating a common plan and design and the statements in each of Exhibits Seven, Eight and Nine indicate the intent of the deceased, Mary D. Webb, and Edward M. Webb, Sr., as giving advances to the children."

I.C. § 14–109 provides:

"All gifts and grants are made as advancements, if expressed in the gift or grant to be so made, or if charged in writing by the decedent as an advancement, or acknowledged in writing as such by the child or other successor or heir."

Appellant contends that none of the documentary evidence admitted is competent to prove that there was any "advancement" made to her when she received the gift deed to the 160 acres of land, and that the trial court was in error in treating this transaction as an advancement. Research fails to disclose that I.C. § 14–109 has ever been

previously discussed by this court. This section is identical with Cal.C.C.1872, § 1397, which was based upon § 7 Act April 13, 1850, Statutes of Calif., 1850, p. 221. Comparable statutes have been enacted in other jurisdictions.

In Stark v. Stark, 128 Neb. 524, 259 N.W. 523 (1935), the historical development of the doctrine of advancements is discussed. Therein it was pointed out that such doctrine is of statutory origin and was unknown at the common law, citing statute of 22 and 23 Charles II, c. 10. That court referred to decisions from Massachusetts, Michigan and Wisconsin, and earlier decisions of the Nebraska court, all of which held that a statute comparable to I.C. § 14–109 excludes the admission of parol evidence to prove an advancement; that the only method by which advancements can be proven are as outlined in the statute, i. e., it must be expressed in the gift or grant or it must be charged in writing by the decedent as an advancement or it must be acknowledged in writing as such by the child or successor or heir. See also: In re Vandehurst's Estate, 171 Cal. 553, 154 P. 5 (1915); In re Rawnsley's Estate, 94 Cal.App.2d 384, 210 P.2d 888 (1949).

No one here makes any contention that the gift deed itself expressed the transaction to be an advancement. These deeds were prepared by an attorney when they were executed by the parents, and it would have been a simple matter to have therein reflected the intent of the grantors had they desired them to be considered other than as absolute gifts. And no one contends that there was any acknowledgment in writing by appellant that this deed of gift was an advancement.

It is true the exhibits introduced by respondents to prove the decedent charged the gift as an advancement were in writing, but the entries refer to the deeds to the land as "gifts," and only in reference to the $3,000.00 given to Edward Webb, Jr., and to the entry in Exhibit 9 pertaining to the $18,000.00 sale to Francis Webb is any mention

made from which it can be inferred that these were to be charged against their interests in the estate.

Furthermore, the times when the entries in Exhibit 7 were made are indefinite. It is contended that they were made in chronological order, yet this does not appear from the record itself, and testimony by the respondents as to seeing their mother writing in the various account books is not specific as to time or to the books in which the entries were being made.

Under statutes comparable to I.C. § 14-109, which provide that gifts and grants are made as advancements if expressed in the gift or grant "or if charged in writing by the decedent as an advancement," the courts have generally held that it is essential that the writing referred to must be made contemporaneously with the gift. In Arthur v. Arthur, 143 Wis. 126, 126 N.W. 550 (1910), the court was considering the effect of St. 1898 § 3959, which provided:

"All gifts and grants shall be deemed to have been made in advancement if they are expressed in the gift or grant to be so made or if charged in writing by the intestate as an advancement or acknowledged in writing as such by the child or other descendant, * * *."

That court stated at 126 N.W. 553:

"The manifest purpose of the statute in making the charge in writing evidence of an advancement is *that the charge must be made contemporaneously with the advancement.* This is in harmony with the rule respecting book accounts. In Marshall v. Coleman et al., 187 Ill. 556, at page 580, 58 N.E. 628, at page 636, the court said: 'Book accounts are only admissible in favor of the party who keeps them when the entries are made contemporaneously with the transactions recorded, and the same rule applies to books and entries of deceased persons. Greenl. Ev. (13th Ed.) § 118; Whart.Ev. §§ 246–688; 2 Woerner, Adm'n (2d Ed.) § 558; Nelson v. Nelson, 90 Mo. 460, 2 S.W. 413. "Declarations or book entries of the do-

nor subsequent to the transaction are inadmissible unless they are of the res gestae or against interest." 2 Woerner, Adm'n (2d Ed.) § 558.' See, also, Young et al. v. Young et al., 204 Ill. 430, 68 N.E. 532; Nelson v. Nelson, 90 Mo. 460, 2 S.W. 413. Nor were declarations of John Arthur made after the transfers admissible to prove advancements. Kimball v. Leland, 110 Mass. 325; Harness et al. v. Harness et al., 49 Ind. 384; Thornton on Gifts & Advancements, p. 198, § 224; * * *." (Emphasis added)

In Elliott v. Western Coal & Mining Co., 243 Ill. 614, 90 N.E. 1104 (1910), the Illinois Supreme Court was considering its statute (Hurd's Rev.St.1908, c. 39, § 7), which read:

"No gift or grant shall be deemed to have been made in advancement unless so expressed in writing or charged in writing, by the intestate, as an advancement, or acknowledged in writing by the child or other descendant."

Therein the court stated:

"The question presented here is: Can a gift by a parent to a child be shown to be an advancement by the written statement of the donor made years after the gift? Evidently a donor's declaration that he had several years before given property to a child would not be competent evidence of that fact, but mere hearsay. It would be necessary to prove the gift, not by the declaration of the donor or of any other person, but by testimony given under the sanction of an oath and with an opportunity for cross-examination. It is as important to prove the intention of the donor as to prove the gift itself, and any subsequent declaration, whether oral or written, that he had several years before intended the property given to his daughter to be an advancement would not be competent evidence of that fact. Hearsay is no more competent to prove intent than any other fact. The declarations of a grantor aft-

er he has made a conveyance of land are not admissible to affect the grantee or the title conveyed. Francis v. Wilkinson, 147 Ill. 370, 35 N.E. 150; Bentley v. O'Bryan, 111 Ill. 53; Shea v. Murphy, 164 Ill. 614, 45 N.E. 1021, 56 Am.St.Rep. 215. The intention which will characterize a gift as an advancement is the intention of the donor at the time of making the gift, expressed in the manner required by the statute. The gift in this case became complete at the time of the delivery of the deed. Parol evidence of the donor's intention at that time is immaterial, for the statute requires the evidence to be in writing. It is manifest that the conveyance could not then, or for more than three years afterward, have been regarded as an advancement. It was an absolute gift, for which Mrs. Elliott could not be called upon to account. It was not in the power of the donor later, except by a legally executed will, to change the effect of his acts, and by charging her with her own property change his gift into an advancement. Sherwood v. Smith, 23 Conn. 516; Bradsher v. Cannady, 76 N.C. 445; Lawson's Appeal, 23 Pa. 85. She held the property without liability to account for its value in the settlement of the estate." 90 N.E. 1105.

See also: Fellows v. Little, 46 N.H. 27 (1865); Weatherhead v. Field, 26 Vt. [663] 665 (1854); Bulkeley v. Noble, 19 Mass. (2 Pick.) 337 (1824)

■ It is our conclusion that the record does not disclose that there was any writing contemporaneous with the execution and delivery of the "Gift Deeds" to the four children disclosing that these gifts were to be in fact advancements against their respective interests in the estate. It was error for the trial court to base its affirmance of the probate court's order and decree on the exhibits admitted into evidence. The trial court's order insofar as it recognizes these as advancements must be reversed.

■ Another serious question is presented by this appeal. Appellant contends that inasmuch as she was the only heir that appealed from the order of the probate court, the other heirs must remain bound by the trial court's affirmance of the order of the probate court approving the petition for partial distribution. Appellant points to I.C. § 15–1323, which provides:

"All questions as to advancements made, or alleged to have been made, by the decedent to his heirs may be heard and determined by the probate court, and must be specified in the decree assigning and distributing the estate, [sic] (;) and the final judgment or decree of the probate court, or in case of appeal, of the district or Supreme Court, is binding on all parties interested in the estate."

She contends that by reason of the binding effect to be given the decrees in this regard, and because the other heirs have not appealed from the decree, the determination of the probate court and the district court as to all charges against their respective distributive shares are final. With this contention we do not agree.

The decree of the probate court which was appealed to the district court and there affirmed, after settling the administrator's account, ordered distribution of the sum of $9,350.00 to three heirs, i. e., to LaRie Underwood, to Jonathan Webb, and to Edward M. Webb, Jr., and then provided:

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED and the Court finds that during her lifetime and the lifetime of her husband, Edward M. Webb, Sr., said deceased and her husband made gifts of property and money to their several children in the amounts set forth in said Administrator's report and petition, and that the foregoing distributions will equalize the shares of said distributees with the smallest share of any other heir received by way of advancement of said deceased."

As previously pointed out, the district court held that the deeds and Exhibits 7, 8 and 9

were indicative of the intent of Mrs. Webb to treat the gifts as advancements. The court's order also provided:

"IT IS HEREBY ORDERED that appellant's objection to Exhibits received by the Court is overruled and they are admitted.

"IT IS HEREBY ORDERED that the order and decree of the Probate Court allowing first account of administrator and ordering partial distribution of estate is hereby affirmed."

It is to be noted that neither the order and decree of the probate court nor the order of the district court complied with the requirements of I.C. § 15-1323, which provides that "all questions as to advancements made, or alleged to have been made, by the decedent to his heirs * * * must be specified in the decree assigning and distributing the estate * * *."

The decree appealed from the probate court to the district court, although denominated as a "Decree Allowing First Account of Administration and Ordering Partial Distribution," in effect was a final decree insofar as the distributive shares of the heirs were concerned, as all that remained for disbursement were sums to pay certain costs of administration and sums retained for the purpose of paying federal and state taxes. Therefore, this decree contemplating further proceedings in the administration of the decedent's estate, the entire estate remains within the jurisdiction of the probate court.

Proceedings in probate court for administration of a decedent's estate are in the nature of proceedings in rem. Mason v. Pelkes, 57 Idaho 10, 59 P.2d 1087 (1936); 1 Bancroft, Probate Practice, § 40, p. 107; cf. In re Ross' Estate, 185 Cal. 8, 195 P. 674 (1921).

"A judgment in probate is not against persons as such, but against or upon the thing or subject matter itself, the status or condition of which is to be determined. When rendered, the judgment is a solemn declaration of the status of the thing, ipso facto rendering it what it is declared to be." 1 Bancroft, Probate Practice § 40, p. 107.

Under the unusual circumstances presented by the nature of this appeal and the objectives sought to be obtained, this court approves the language of this court in Rabido v. Furey, 33 Idaho 57, 65, 190 P. 73, 76 (1920):

"Since the appeal was taken from the judgment, and not from a portion thereof, the entire judgment is before the court, and subject to review, even though the respondents took no cross-appeal."

Inasmuch as the modification of the distributive share of one heir, as in this appeal, necessarily affects the shares to be received by the other heirs in this in rem proceeding, and because the probate court and district court incorrectly applied the law as to the issue of advancements, it is incumbent upon the trial court to rehear these issues on the appeal from the probate court and enter its judgment in accordance with the findings made after such rehearing.

Those portions of the order and decree pertaining to settlement of the first account and to the charging of the $7,000.00 loan against appellant's distributive share are affirmed; that portion of the order and decree affirming the probate court's determination as to advancements is reversed and the cause remanded for new trial on those issues.

Costs to appellant.

McQUADE, TAYLOR, SMITH and SPEAR, JJ., concur.