632 P.2d 678

**LINCOLN COUNTY, Plaintiff-Respondent,**

v.

**FIDELITY AND DEPOSIT COMPANY OF MARYLAND, Defendant-Appellant,**

and

**Western Surety Company, Defendant.**

No. 13327.

Supreme Court of Idaho.

Aug. 12, 1981.

Gary D. Babbitt & Edwin V. Apel, Jr., Boise, for defendant-appellant.

William R. Hollifield, Twin Falls, for plaintiff-respondent.

SHEPARD, Justice.

The single issue on this appeal is whether the action is barred by the statute of limitations. Defendant-appellant, Fidelity and Deposit Company of Maryland, issued performance bonds in increments of two years covering Myron Johnson, the treasurer and tax collector of Lincoln County during his terms of office (two years) from 1941 to 1971.[1] Johnson left office in 1977 when it was discovered he had misappropriated funds and failed to collect delinquent taxes. Lincoln County brought action on the bonds. Fidelity and Deposit Company filed an I.R.C.P. 12(b)(6) motion to dismiss, or in the alternative for summary judgment, on the basis that the action was barred by the statute of limitations. The district court issued an order denying such motion and filed its certificate indicating that the issue presented a controlling question of law and the Supreme Court review of the otherwise unappealable denial of the motion would obviate lengthy and expensive litigation. This Court agreed and issued its order permitting appeal by certification. See I.A.R. 12(a). We reverse.

[1] It is clear that I.C. § 5–218(1) is the applicable statute of limitations in actions by a county against the surety of a defaulting county official. City of St. Anthony v. Mason, 49 Idaho 717, 291 P. 1067 (1930);

---

1. Western Surety bonded Johnson in two year increments from 1971–1979. Western Surety is a party below but not an appellant here.

*Canyon County v. Moore,* 34 Idaho 732, 203 P. 466 (1921); *County of Ada v. Ellis,* 5 Idaho 333, 48 P. 1071 (1897).

I.C. § 5–218(1) was amended in 1974 to its present form and language. In its pre-1974 language, the statute provided for a three year statute of limitations. This Court has held that under the pre-1974 statutory language a cause of action against a surety accrues at the end of the official's term of office. *St. Anthony v. Mason, supra; Canyon County v. Moore, supra.* This Court has never dealt with a situation as presented here where an official has served several successive terms of office during which defalcations have occurred. Other jurisdictions have held, however, that a cause of action on the bond accrues at the end of each individual term during which a defalcation occurs notwithstanding that the official has served additional successive terms since each term of office is distinct and the fact that an official is his own successor is of no consequence. *See State ex rel. Grassie v. Masterson,* 221 Kan. 540, 561 P.2d 796 (1977); *Saginaw County v. Kent,* 209 Mich. 160, 176 N.W. 601 (1920); *Bitter v. Bexar County,* 266 S.W. 224 (Tex.Civ.App. 1924); *City of Hillyard v. Carabin,* 96 Wash. 366, 165 P. 381 (1917); *County of Platte v. New Amsterdam Cas. Co.,* 6 F.R.D. 475, 495–96 (D.Neb.1946); 20 C.J.S. *Counties* § 160 (1940); 67 C.J.S. *Officers* § 293 (1978).

In the instant case a cause of action under pre-1974 I.C. § 5–218(1) accrued at the end of each of Johnson's individual terms. Fidelity's final bond on Johnson was for that term of office ending January 12, 1971. Thus, in the absence of other factors, the statute barred any claim on Fidelity's bond following January 12, 1974. The district court held and Lincoln County argues here that a judicial exception should be engrafted extending the otherwise governing statute of limitation to such time as the defalcation was or should have been discovered. That argument was made, discussed and rejected by a majority of the Court in *Canyon County v. Moore, supra.* We deem the pre-1974 statute to be clear and unambiguous. When the language of subsection (1) of the pre-1974 statute is compared with the language of subsection (4) of that statute, it is clear that the legislature was aware of the discovery rule and determined to make it applicable to causes of actions falling within subsection (4), but not to actions falling within subsection (1). We also note in passing the absence in the instant case of the policy considerations which impelled the decisions of this Court in *Renner v. Edwards,* 93 Idaho 836, 475 P.2d 530 (1970) and *Billings v. Sisters of Mercy of Idaho,* 86 Idaho 485, 389 P.2d 224 (1964).

Lincoln County next argues that this Court should construe the pre-1974 statute as containing a discovery exception to the three year statute of limitations on the basis of the language contained in the 1974 amendatory legislation. That legislation provided: "The purpose of this act is to clarify the law with respect to the statute of limitations applied to bonds of public officials." 1974 Idaho Sess. Laws ch. 240, § 1. Lincoln County argues that said language indicates that the legislature was announcing the then existing law rather than changing the then existing law. Following that legislative enactment, I.C. § 5–218(1) provides:

"An action upon a liability created by statute, other than a penalty or forfeiture. The cause of action in favor of the state of Idaho or any political subdivision thereof, upon a surety bond or undertaking provided for or required by statute shall not be deemed to have accrued against any surety on such bond or undertaking until the discovery by the state of Idaho or any political subdivision thereof of the facts constituting the liability."

Such language is clearly a substantial departure from the pre-1974 statutory language and clearly engrafts a discovery rule upon the pre-1974 language. When a statute is amended, it is presumed that the legislature intended it to have a meaning different from that accorded to it before the amendment. *Wellard v. Marcum,* 82 Idaho 232, 351 P.2d 482 (1960); *Pigg v. Brockman,* 79 Idaho 233, 314 P.2d 609 (1957).

Lincoln County finally argues that the 1974 legislative amendment of I.C. § 5–218(1) is or should be retroactive in its application. No statute is retroactive "unless expressly so declared." I.C. § 73–101. Section 3 of ch. 240 of the 1974 Idaho Sess. Laws states:

> "An emergency existing therefor, which emergency is hereby declared to exist, this act shall be in full force and effect on and after its passage and approval, and shall apply to all causes of action against any surety on any such bond or undertaking, which said causes of action shall have been discovered by the state of Idaho or any political subdivision thereof within three (3) years immediately preceding the date of passage and approval of this act."

Thus, the only express declaration of retroactivity contained in the amendment of 1974 is to causes of action discovered within three years preceding the date of its passage, i. e., April 3, 1974. *See also Martin v. Clements*, 98 Idaho 906, 575 P.2d 885 (1978).

We hold that the instant cause of action against Fidelity and Deposit Company of Maryland is barred by the statute of limitations. The orders and decisions of the trial court are reversed and the cause is remanded for further proceedings consistent herewith. Costs to appellant.

BAKES, C. J., and McFADDEN and DONALDSON, JJ., concur.

BISTLINE, Justice, dissenting.

The decision of the trial court should be affirmed. I am able to agree with the Court's statement that a cause of action on a surety bond such as that here involved accrues at the end of each individual term during which a defalcation has occurred, provided, however, only as applicable to *dis-covered* defalcations. I see the 1974 amendment to I.C. § 5–218(1) as urged by respondent county, and as apparently so viewed by the trial court. At the time of the amendment the legislature was obviously well aware of the judicial pronouncements applying the discovery rule, and I see in the language of the statement of purpose only legislative recognition of such coupled with legislative desire to go on record as declaring its intent—thus obviating future judicial debate on the issue. Even were that not the case, the 1974 amendment provides a clear indication of the legislative frame of mind, and should influence the Court into coming to the right determination. The interested legal scholar or practitioner will note with some concern that in *Martin v. Clements*[1] the Court looked to the "clear legislative intent of amended I.C. § 5–219(4),"[2] for guidance and direction in reaching its determination in that case, even though the amendment was conceded to have no applicability to a cause of action which had accrued prior to the amendment.

*City of St. Anthony v. Mason*[3] did not involve public monies surreptitiously taken, but city monies lost during the bank failures of the great depression. The fact that Justice Budge wrote the Court's unanimous opinion is of more than mere passing interest—keeping in mind that he wrote the dissenting opinions in the earlier cases of *Canyon County v. Moore*[4] and its predecessor, *Wonnacott v. County of Kootenai.*[5] *Canyon County v. Moore* is a short and wholly unenlightening opinion of one full page which makes no discussion whatever of the discovery rule, and does not disclose whether the defalcations were or were not discovered early on and within the three year time period. The case simply goes off on the basis of the *Wonnacott* case. Justice Budge, however, in dissent, observed that "It is necessary, therefore, to determine whether or not there is an exception,

1. *Martin v. Clements*, 98 Idaho 906, 575 P.2d 885 (1978).

2. 98 Idaho at 910, 575 P.2d at 889.

3. *City of St. Anthony v. Mason*, 49 Idaho 717, 291 P. 1067 (1930).

4. *Canyon County v. Moore*, 34 Idaho 732, 203 P. 466 (1921).

5. *Wonnacott v. County of Kootenai*, 32 Idaho 342, 182 P. 353 (1919).

whether there was such fraud or mistake, and whether the county had or was presumed to have had notice of such breach."[6] Citing a multitude of authority, some of which is directly quoted in his opinion, none of which was refuted or discussed in the opinion of the Court (a hardly acceptable state of affairs), he concluded (1) that if it appears that fraud is involved, the cause of action will not be deemed to have accrued until the facts have been discovered, (2) that a county official possessing public funds occupies the position of a fiduciary to the county, and (3) that where a public official appropriates public moniès to his own use, and submits false and misleading reports, he should not be permitted by reason of his own wrongful acts to profit thereby, requiring "as supported by the great weight of authority" that the running of the statute is tolled until the discovery of the fraud.

*Wonnacott*, as is readily seen is of doubtful weight, having been decided in the days of a three member court with no two of the justices agreeing, and all three writing opinions. *Wonnacott* stands no better, in fact, worse than *Canyon County*. Two members of the Court improperly[7] held that the statute of limitations could be raised in bar of a claim of set-off—with which we have no concern, other than to note the error—and there was no claim of fraudulently concealed defalcations. Justice Budge in his opinion thoroughly decimated the other two opinions on the two propositions before the Court, observing with a jaundiced eye the view of one opinion that a

county official whose defalcations are not discovered during his term "by reason of exceptional skill, or for any other reasons"[8] ought to stand in better stead than the county official whose indebtedness to the county is discovered during the term.

It is my considered view that counsel for the county are entirely correct in the assertion that the opinions of Justice Budge are the better reasoned. In fact, the other opinions in those early cases are unfortunately bereft of any reasoning whatever, and *Canyon County* simply purports to be premised upon *Wonnacott*.

Concurring in Justice Budge's depiction of a county official's stand as a fiduciary, I add that much of that which I wrote in *Ralphs v. Spirit Lake*[9] and *Martin v. Clements* is applicable, particularly the companion California cases of *Neel v. Magana*,[10] and *Budd v. Nixen*.[11] I am also much influenced by that which Justice McFadden wrote in *Harbaugh v. Myron Harbaugh Motor, Inc.*,[12] as to the running of the statute of limitations where a fiduciary relationship exists:

> "The question of when the statute of limitations commences to run in the guardian-ward relationship is one of first impression in Idaho. But this court has had occasion to decide the issue in analogous fiduciary contexts.

> "In an action by a beneficiary against his trustee, the rule has long been that the period of limitation begins when the trust is terminated, disavowed or repudiated by the trustee, *and such conduct is*

---

6. 34 Idaho at 737, 203 P. at 467 (Budge, J., dissenting).

7. In *Hirning v. Webb*, 91 Idaho 229, 419 P.2d 671 (1966), Justice McFadden wrote for a unanimous Court:

> "In *Kelson v. Ahlborn*, 87 Idaho 519, 393 P.2d 578, this court was presented with the issue of whether a defendant's cross-demand, arising from the same transaction as the plaintiff's original claim, could be set off against the plaintiff's claim even though affirmative relief on the cross-claims was barred by the statute of limitations. This court held that such cross-demands, although barred as the basis for affirmative relief,

could be set off against the plaintiff's claim." *Id.* at 231, 419 P.2d at 673.

8. 32 Idaho at 352, 182 P. at 356 (Budge, J., dissenting).

9. *Ralphs v. Spirit Lake*, 98 Idaho 225, 560 P.2d 1315 (1977).

10. *Neel v. Magana*, 6 Cal.3d 176, 98 Cal.Rptr. 837, 491 P.2d 421 (1971).

11. *Budd v. Nixen*, 6 Cal.3d 195, 98 Cal.Rptr. 849, 491 P.2d 433 (1971).

12. *Harbaugh v. Myron Harbaugh Motor, Inc.*, 100 Idaho 295, 597 P.2d 18 (1979).

**494**

unequivocably made known to the benefi-
ciary. *Shepherd v. Dougan,* 58 Idaho 543,
76 P.2d 442 (1937); *Brasch v. Brasch,* 55
Idaho 777, 47 P.2d 676 (1935); *Davenport
v. Bird,* 45 Idaho 280, 261 P. 769 (1927);
*Olympia Mining & Milling Co. v. Kerns,*
24 Idaho 481, 135 P. 255 (1913)." (Em-
phasis added, p. 299, 597 P.2d 18.)

Concluding, I submit that the Court may
find that it has blithely placed too much
reliance on the early Idaho cases without
making any in-depth study as to their appli-
cability. As a result the bonding company,
which received a premium from the county
and assumed the risks, escapes a substantial
loss which in turn has to be absorbed by the
county taxpayers. It is to be kept in mind
that official bonds are required of most
county officials, and that there are in Idaho
44 counties. Unlike assigned risks in the
field of liability insurance, a bonding com-
pany is under no obligation to bond anyone.
A compilation of statistics would probably
show that bonding company losses to coun-
ties and to the state are less than ½ of 1%,
if that high. And it is not to be forgotten
that bonding companies ordinarily require
indemnity agreements before they will exe-
cute an official bond.

With all of the foregoing in mind it is
difficult to conceive that it was ever intend-
ed that bonding companies would escape
liability where the officials whom they
bonded were the unworthy but possessed of
the "exceptional skill" referred to by Jus-
tice Budge. To so hold is to hand a wind-
fall to the bonding companies at the ex-
pense of the defrauded public.

I respectfully dissent.