30 P.3d 300

**M. Wayne WILHELM and Randie Wilhelm, husband and wife, Plaintiffs–Respondents,**

v.

**W. James JOHNSTON, Defendant–Appellant,**

and

**David Packer and Does I–IV, Defendants.**

**W. James Johnston and Karen Johnston, husband and wife, Plaintiffs–Appellants,**

v.

**M. Wayne Wilhelm and Randie Wilhelm, husband and wife, Defendants–Respondents.**

No. 25796.

Court of Appeals of Idaho.

July 30, 2001.

148

Jones, Chartered, Pocatello, for appellant. Thomas J. Holmes argued.

Curtis N. Holmes, Pocatello, for respondent.

LANSING, Judge

This appeal arises from a deficiency action brought by the beneficiaries of a deed of trust following a trustee's foreclosure sale. Based on a determination that the fair market value of the property sold at the trustee's sale exceeded the secured debt, the district court denied the beneficiaries' claim for a deficiency and, in addition, awarded the debtors a judgment for the surplus of the fair market value in excess of the debt. On appeal, the deed of trust beneficiaries assert that the district court committed several errors in denying their claim for a deficiency and in rendering a judgment in favor of the debtors.

## FACTS AND PROCEDURAL HISTORY

In 1983, W. James Johnston and Karen Johnston, husband and wife, sold a house to Wayne and Randie Wilhelm, husband and wife. The Johnstons financed the transaction, taking from the Wilhelms a promissory note secured by a deed of trust on the house. The Wilhelms defaulted on their payments, and in May 1995, the Johnstons filed a notice of default and notice of trustee's sale to foreclose the deed of trust. Pursuant to Idaho Code § 45–1506(12), the Wilhelms had 115 days after the filing of the notice of default within which to cure the default and thereby avoid a foreclosure, but they did not do so. On September 9, 1995, the day of the scheduled trustee's sale, the Wilhelms filed an action to stay the sale. This proceeding, which we will refer to as "the first state court action," turned out to be only the first of several state and federal court proceedings spawned by the disputes between these parties. While the first state court action was pending, the Wilhelms filed a bankruptcy petition in federal court, which effectuated an automatic stay of the foreclosure. Nevertheless, the Wilhelms continued to periodically make payments to the Johnstons in 1996 in an apparent attempt to bring their payments up to date. The last of these payments was made in December 1996, but it brought the Wilhelms current on their obligation only up to May 1996. Later, the Wilhelms voluntarily dismissed the bankruptcy petition.

Contemporaneous with the bankruptcy dismissal, the parties reached a settlement agreement which called for the Wilhelms to pay the Johnstons $25,000 in a lump sum, make regular monthly payments as provided in the original promissory note for April through July 1997, and assume a first mortgage on the house. To procure the $25,000, the Wilhelms sought a home equity loan from a third-party lender. At the request of the lender, a professional real estate appraiser, Charlene Tovey, appraised the property. Ms. Tovey valued the property at $63,400, and the lender made the requested $25,000 loan. The Wilhelms then paid $24,996.40 to the Johnstons, but the Wilhelms did not perform their remaining obligations under the settlement agreement. After the settlement agreement failed, the district court in the first state court action ordered that the trustee's sale could proceed and that the parties should return to each other any part of the settlement agreement performance that had been tendered. Despite this, the Johnstons retained the $24,996.40. The property was sold at a trustee's sale on November 3, 1997, at which time the unpaid principal of the secured debt exceeded $40,000. The Johnstons were the only bidders. They purchased the property for a credit bid of $10,000 and were issued a trustee's deed. On December 4, 1997, the Wilhelms brought a second state court action to set aside the sale. Relief was denied in that case.

Before the trustee's sale, the Wilhelms moved out of the residence but left many items of personal property. They later claimed that this property was removed or destroyed by the Johnstons, and the Wilhelms filed a third action against the Johnstons seeking damages for conversion of their personalty. Thereafter, the Johnstons filed the present action against the Wilhelms for a deficiency judgment under I.C. § 45–1512. The deficiency action was consolidated with the Wilhelms' conversion action. For purposes of the deficiency action, the John-

stons hired an appraiser, Scott Watson, to conduct an appraisal. He appraised the property at a value of $33,000.

Following a two-day court trial, the district court denied the Wilhelms' claim for damages for conversion of their personal property. With respect to the Johnstons' deficiency action, the district court found Tovey's appraisal of the property to be more credible than Watson's appraisal, and thus determined the fair market value of the property to be $63,400 at the time of the trustee's sale. The district court found that the debt secured by the deed of trust totaled $53,493.89, including principal of $40,664.67, interest accrued through the date of the trustee's sale, and unpaid taxes and insurance premiums that had been the Wilhelms' obligation. Based upon the finding that the property value exceeded the debt owed, the district court held that the Johnstons were not entitled to a deficiency judgment, and, further, that the Johnstons owed to the Wilhelms the "surplus" of $9,906.11, representing the amount by which the property value exceeded the secured debt. The judgment also ordered the Johnstons to repay the Wilhelms the $24,996.40 from the failed settlement agreement, this part of the judgment being a reiteration of the order that had been rendered by a different district judge in the first state court action.[1] The Johnstons appeal.

## ANALYSIS

■ The rights of the parties following the nonjudicial foreclosure of a deed of trust are governed by I.C. § 45–1507, *et seq.* Section 45–1512 provides that a beneficiary of a deed of trust may obtain a deficiency judgment for the amount by which the secured indebtedness exceeds the fair market value of the property at the time of the trustee's sale or the amount by which the secured debt exceeds the sale price, whichever yields a smaller deficiency.[2] In other words, if the fair market value of the property exceeded the price for which it was sold by the trustee, the deficiency is measured against the fair market value, not against the amount realized from the sale. Accordingly, to determine whether there is a deficiency, a trial court must first determine the fair market value of the property at the time of the foreclosure sale. The court must also determine the entire amount of indebtedness secured by the deed of trust. The Johnstons contend that the district court made several errors in determining these two figures and in making a "surplus" award to the Wilhelms.

■ When a court trial has been conducted, we will not set aside the lower court's findings of fact unless they are clearly erroneous. I.R.C.P. 52(a); *Schiewe v. Farwell*, 125 Idaho 46, 50–51, 867 P.2d 920, 924–25 (1993); *Christensen v. Nelson*, 125 Idaho 663, 665, 873 P.2d 917, 919 (Ct.App.1994). We do not weigh the evidence, nor do we substitute our view of the facts for that of the trial court. *Id.* Rather, we defer to the trial court's opportunity to judge the credibility of witnesses appearing personally before it. *Id.* However, we exercise free review over the trial court's conclusions of law to determine whether the court correctly stated the applicable law, and whether the legal conclusions are sustained by the facts found. *Conley v.*

---

1. The Johnstons do not contest on appeal this component of the judgment ordering the return of the settlement payment plus interest. Neither party argued below or on appeal that this $24,996.40 payment should have been credited against the secured debt for purposes of determining the deficiency, nor did the district court so hold.

2. Idaho Code § 45–1512 provides:

   At any time within 3 months after any sale under a deed of trust, as hereinbefore provided, a money judgment may be sought for the balance due upon the obligation for which such deed of trust was given as security, and in such action the plaintiff shall set forth in his complaint the entire amount of indebtedness which was secured by such deed of trust and the amount for which the same was sold and the fair market value at the date of sale, together with interest from such date of sale, costs of sale and attorney's fees. Before rendering judgment the court shall find the fair market value of the real property sold at the time of sale. The court may not render judgment for more than the amount by which the entire amount of indebtedness due at the time of sale exceeds the fair market value at that time, with interest from date of sale, but in no event may the judgment exceed the difference between the amount for which such property was sold and the entire amount of the indebtedness secured by the deed of trust.

*Whittlesey,* 133 Idaho 265, 269, 985 P.2d 1127, 1131 (1999); *Burns v. Alderman,* 122 Idaho 749, 752–53, 838 P.2d 878, 881–82 (Ct. App.1992).

## A. Fair Market Value

The Johnstons first complain that the district court erred in relying upon the valuation of the property given by the Wilhelms' expert witness, Charlene Tovey, rather than the considerably smaller value assigned by the Johnstons' appraiser, Scott Watson.

The weight to be given the testimony of an appraiser or other expert witness is a question for the trier of fact. *Roemer v. Green Pastures Farms, Inc.,* 97 Idaho 591, 593, 548 P.2d 857, 859 (1976); *Farber v. Howell,* 111 Idaho 132, 134, 721 P.2d 731, 733 (Ct.App.1986). As discussed above, a trial court sitting without a jury has broad discretion in weighing the credibility of witnesses, and the trial court's decisions in that regard will be disturbed on appeal only when they are clearly erroneous. *Sun Valley Shamrock Res., Inc. v. Travelers Leasing Corp.,* 118 Idaho 116, 118, 794 P.2d 1389, 1391 (1990). This deference is given because the trial court is in a better position to weigh the demeanor, credibility, and testimony of witnesses and the persuasiveness of all the evidence. I.R.C.P. 52(a); *Hinkle v. Winey,* 126 Idaho 993, 1000, 895 P.2d 594, 601 (Ct.App. 1995).

The Johnstons point out that Tovey's appraisal of $63,400 was done about six months before the foreclosure sale and that Tovey did not observe points of destruction and damage within the house that led Watson to come to the lower valuation of $33,000. The district court, however, found Tovey's appraisal to be more credible because it was done for the benefit of a disinterested third-party lender whereas Watson's appraisal was done for purposes of the present litigation. The court also found Watson's opinion to be subject to question because the comparable home sales that he used were great distances from the subject property and because Watson had an ongoing professional relationship with Mr. Johnston, performing several appraisals per year for Mr. Johnston or the real estate company that Mr. Johnston worked for. The court also found that photographs of the property contradicted some of Watson's assertions about its condition. The district court's stated reasons for relying on Tovey's appraisal are supported by substantial and competent evidence, and we conclude that the district court did not commit clear error in assigning greater credibility to that appraisal. Therefore, we will not disturb the district court's factual finding that the fair market value of the property was $63,400.

## B. Attorney Fees as an Expense of the Trustee's Sale

Next, the Johnstons argue that the district court erred in failing to include as a part of the secured indebtedness the sum of $10,727.24 for attorney fees that the Johnstons claim to have incurred in order to accomplish the trustee's sale. We agree that reasonable attorney fees incurred for the sale should have been included as a part of the secured debt for purposes of determining the amount of any deficiency. At least where there are no contractual provisions to the contrary, costs of the trustee's sale, including reasonable attorney fees incurred for purposes of accomplishing the sale, are part of the indebtedness secured by the deed of trust and are recoverable as part of the deficiency judgment. *See* I.C. § 45–1507; *Farber,* 111 Idaho at 135, 721 P.2d at 734.

Like findings on other factual issues, the determination of what amount constitutes a reasonable attorney fee is committed to the trial court. The determination of a reasonable amount is necessarily subject to some discretion on the part of the fact finder. *DesFosses v. DesFosses,* 122 Idaho 634, 638, 836 P.2d 1095, 1099 (Ct.App.1992); *Meldco, Inc. v. Hollytex Carpet Mills, Inc.,* 118 Idaho 265, 271, 796 P.2d 142, 148 (Ct.App.1990). However, it is not within the trial court's discretion to deny *any* attorney fees where there is sufficient evidence showing that some fees have been reasonably incurred for purposes of the trustee's sale.

In explaining its denial of attorney fees for the Johnstons' foreclosure sale, the district court said, "[T]he Court finds that the fee of $10,727.24 is not reasonable for the

non-judicial foreclosure of a deed of trust. Additionally, without more evidence it is impossible to determine what a reasonable attorney fee would be. Accordingly, attorney's fees will not be allowed." We conclude that the district court was in error in holding that the evidence was inadequate to determine a reasonable attorney fee. The evidence before the court included a compilation of the billing records of Johnstons' attorney, which presented considerable detail regarding the services provided and the amounts charged. The bookkeeper for Johnstons' attorney testified at the trial to explain what the billing records encompassed and how they were prepared. The bills show legal services provided from the commencement of the nonjudicial foreclosure in 1995 through the date of the trustee's sale. These services included the defense against the Wilhelms' first state court action to stay the foreclosure sale and representation of the Johnstons in the bankruptcy action to lift the bankruptcy stay. The Wilhelms produced no evidence to controvert these charges or to show that the charges were unreasonable. Although a trier of fact might justifiably conclude that the Johnstons' evidence was not sufficient to demonstrate that the entire amount of attorney fees claimed is reasonable or related to the sale, there was sufficient evidence from which a trier of fact could discern that at least some of the charges were reasonably and necessarily incurred to effectuate the trustee's sale. We conclude that the district court's refusal of any award was an abuse of discretion. Therefore, this matter must be remanded for the district court to reconsider this claim and make an award of a reasonable sum for attorney fees incurred as an expense of the trustee's sale. The amount so determined shall be added to the secured indebtedness for purposes of ascertaining whether there is a deficiency and, if so, its amount.

## C. Interest from Date of Sale

In calculating the amount of secured indebtedness for purposes of determining a deficiency, the district court included interest accrued on the principal through the date of the foreclosure sale. On appeal, the Johnstons claim that the court should have also included post-sale interest through the date of judgment in computing the deficiency. Their argument is without merit. There would be no debt upon which interest could accrue after the date of the foreclosure sale unless there was a deficiency remaining after the sale, and if a deficiency remained, the interest could accrue only upon the amount of the deficiency, not the entire principal debt that existed before the sale. We stated in *Farber*, 111 Idaho at 135, 721 P.2d at 734, "As to the interest accrued from the date of sale, § 45–1512 explicitly allows such interest to be calculated on and added to *any deficiency remaining* after subtracting the fair market value." (Emphasis added.) The Johnstons mistakenly contend that *Frontier Fed. Sav. & Loan Ass'n v. Douglass*, 123 Idaho 808, 853 P.2d 553 (1993), supports the inclusion of post-sale interest in determining a deficiency. In *Frontier*, the court held that, in accordance with provisions of the promissory note, the creditor was entitled to interest at the note rate until the date of judgment. However, in *Frontier*, there was a deficiency upon which interest could accrue after the date of sale. We think it apparent that the discussion in *Frontier* refers to interest on that deficiency. Nothing in *Frontier* suggests that post-sale interest should be considered in determining whether there was a deficiency in the first instance.

In the present case, the district court found there was no deficiency owed to the Johnstons, and the court therefore had no reason to consider post-sale interest. We have, however, held that the district court erred in computing the entire indebtedness by failing to include an amount for the Johnstons' reasonable attorney fees as a cost of the trustee's sale. On remand, when the district court has made allowance for such attorney fees, it is possible that this increase in the total secured debt will result in some deficiency in favor of the Johnstons. Only in that event would the Johnstons be entitled to post-sale interest, and such interest would accrue only on the deficiency.

## D. Surplus Value Award to Wilhelms

As noted above, the district court found that the fair market value of the house exceeded the total secured debt by the

amount of $9,906.11, and the court gave the Wilhelms judgment against the Johnstons for this surplus value. The Johnstons contend that this was error, and we agree.

Even if, on remand, there continues to be a surplus of fair market value over debt, after the district court has added to the secured debt an allowance for reasonable attorney fees, such surplus will not be awardable to the Wilhelms. The rights of the parties upon nonjudicial foreclosure of a deed of trust are governed by Chapter 15, Title 45, of the Idaho Code. We find nothing in that chapter, or elsewhere in Idaho statutory or decisional law, that authorizes a court to award the surplus value to a defaulting debtor when the fair market value of the property serving as security exceeds the amount of the debt secured by a deed of trust. Idaho Code § 45–1507 provides that a debtor is entitled to any surplus of *actual proceeds* from a trustee's sale after the expenses of the sale, the obligations secured by the deed of trust, and any subordinate liens have been satisfied, but there is no corresponding provision for an award to the debtor measured by the excess of fair market value over the secured debt. Neither is there any term in the promissory note or deed of trust which provides for such an award. Here, there was no surplus from the trustee's sale, which brought a price of $10,000 on the Johnstons' credit bid. Therefore, there was no basis for an award to the Wilhelms.

In granting this money judgment to the Wilhelms, the district court relied upon a statement in an introduction to the RESTATEMENT (THIRD) OF PROPERTY (1997) which notes that a debtor has the "right to any surplus generated by a foreclosure sale." RESTATEMENT (THIRD) OF PROP.: MORTGAGES INTRODUCTION, at 4–5. This statement, however, is nothing more than a reflection of the rule expressed in I.C. § 45–1507, allowing surplus sale proceeds to the debtor. The same RESTATEMENT elsewhere expressly observes that an excess of fair market value over secured debt does not create a surplus awardable to the debtor. *See* RESTATEMENT (THIRD) OF PROPERTY, § 8.4, cmt. b at 597.

The district court also premised its surplus award to the Wilhelms on the equitable doctrines of quasi-contract and quasi-estoppel. The court reasoned that these doctrines were applicable because the Johnstons had acted inequitably by continuing to accept payments tendered by the Wilhelms in 1996 even though the time had expired for the Wilhelms to cure the default and thereby avoid a foreclosure sale pursuant to I.C. § 45–1506(12). The district court also deemed inequitable the Johnstons' retention of the $24,996.40 payment which the court in the first state court action had ordered them to refund after the attempted settlement failed.

A right of recovery in quasi-contract, also known as unjust enrichment, occurs where "the defendant has received a benefit which would be inequitable to retain at least without compensating the plaintiff to the extent that retention is unjust." *Beco Const. Co., Inc. v. Bannock Paving Co., Inc.,* 118 Idaho 463, 466, 797 P.2d 863, 866 (1990) (quoting *Hertz v. Fiscus,* 98 Idaho 456, 457, 567 P.2d 1, 2 (1977)). *See also Curtis v. Becker,* 130 Idaho 378, 382, 941 P.2d 350, 354 (Ct.App.1997); *Idaho Lumber, Inc. v. Buck,* 109 Idaho 737, 745, 710 P.2d 647, 655 (Ct. App.1985). This doctrine may not be appropriately applied in the present case because a recovery for unjust enrichment is not permissible where there is an enforceable express contract between the parties covering the same subject matter. *DBSI/TRI v. v. Bender,* 130 Idaho 796, 805, 948 P.2d 151, 160 (1997); *Wolford v. Tankersley,* 107 Idaho 1062, 1064, 695 P.2d 1201, 1203 (1984); *Marshall v. Bare,* 107 Idaho 201, 205, 687 P.2d 591, 595 (Ct.App.1984). Here, the existence of an enforceable promissory note and deed of trust, which define the parties' rights and responsibilities, precludes application of the unjust enrichment doctrine.

The doctrine of quasi-estoppel applies when a party asserts a position or claim inconsistent with one previously taken, with knowledge of the facts and of his or her rights, to the detriment of the party seeking application of the doctrine. *Sun Valley Hot Springs Ranch, Inc. v. Kelsey,* 131 Idaho 657, 662, 962 P.2d 1041, 1046 (1998); *The Highlands, Inc. v. Hosac,* 130 Idaho 67, 70, 936 P.2d 1309, 1312 (1997); *Willig v. Dep't of Health & Welfare,* 127 Idaho 259, 261, 899

P.2d 969, 971 (1995); *Mitchell v. Zilog, Inc.,* 125 Idaho 709, 715, 874 P.2d 520, 526 (1994); *KTVB v. Boise City,* 94 Idaho 279, 281–82, 486 P.2d 992, 994–95 (1971). The inconsistent position must have procured some advantage to the challenged party or produced some disadvantage to the other; or the person invoking the estoppel must have been induced to change his position. *Mitchell, supra; KTVB, supra.* We fail to see how this doctrine bears upon the present case. Although the payments made in 1996 benefited the Johnstons, their acceptance of the payments was not inequitable. The payments were made at the Wilhelms' own initiative, were tendered through their legal counsel, and had the effect of reducing the Wilhelms' liability on a debt owed to the Johnstons. The fact that the statutory period to cure the default had expired presumably was known to the Wilhelms and their attorney when the payments were tendered, and there is no evidence that the Johnstons misled the Wilhelms in that regard. The Johnstons' acceptance of these payments is not inconsistent with their claim for a deficiency judgment or with their position that the Wilhelms are not entitled to a judgment for the surplus fair market value.

█ As to the Johnstons' retention of the $24,996.40 settlement payment after the district court in the first state court action ordered them to return it, such conduct can be deemed wrongful, but it does not constitute a position inconsistent with one taken by the Johnstons in this lawsuit. The Johnstons' disobeyance of the earlier court order to return the payment was addressed by the portion of the judgment in the present case awarding the amount of that payment plus interest to the Wilhelms. We can perceive no logical or legal relationship between the Johnstons' conduct with respect to the settlement payment and the question whether the Wilhelms are entitled to an award for the surplus of the house's fair market value over the amount of the debt owed. Consequently, the award to the Wilhelms of $9,906.11 for the surplus fair market value of the house is reversed.

**E. Offset for Taxes Barred by the Statute of Limitations**

By terms of the promissory note and escrow agreement, it was the Wilhelms' obligation to reimburse the Johnstons the real property taxes paid on the house, but the Wilhelms neglected to do so. In calculating the total secured debt owed by the Wilhelms, the Johnstons included a claim for reimbursement for property taxes dating back to 1983. The district court held that the Johnstons' claim for taxes from 1983 through 1992 was barred by the statute of limitations. On appeal, the Johnstons argue that even though the statute of limitations on their claim for these tax payments has expired, they should have been allowed to recoup these taxes as a setoff against the "surplus value" judgment awarded to the Wilhelms. They invoke the rule that even though affirmative relief on a claim is barred by the statute of limitations, it may be presented defensively as a setoff against an adverse claim. *See, e.g., Beard v. George,* 135 Idaho 685, 687–688, 23 P.3d 147, 149–50 (2001); *Hirning v. Webb,* 91 Idaho 229, 231, 419 P.2d 671, 673 (1966); *Kelson v. Ahlborn,* 87 Idaho 519, 528, 393 P.2d 578, 583 (1964); *Viehweg v. Thompson,* 103 Idaho 265, 268, 647 P.2d 311, 314 (Ct.App.1982). This issue has become moot in light of our holding that the surplus award to the Wilhelms was error; that award no longer exists as one against which the time-barred taxes can be offset.[3]

---

**3.** If and to the extent that the Johnstons contend they are entitled to offset the back taxes against the portion of the judgment ordering that they repay the $24,996.40 that they retained from the failed settlement, we reject their argument. Before the present action for a deficiency judgment was filed, the Johnstons had already been ordered by the district court in the first state court action to repay that sum to the Wilhelms. That was a final order of the district court resolving the issue of entitlement to the settlement payment. The portion of the district court's judgment in the present case ordering the Johnstons to repay the $24,996.40 is redundant and merely a reiteration of the award already made in the separate, earlier action. Due to the existence of the prior dispositive order resolving the Wilhelms' claim to this sum, it was not a claim legitimately at issue in this deficiency action against which the Johnstons should be allowed to assert a setoff for the time-barred taxes.

**154**

### F. Attorney Fees on Appeal

The Johnstons have requested attorney fees on appeal pursuant to terms of the note and deed of trust. However, because the Johnstons were unsuccessful in some of the issues they raised on appeal, we conclude that both parties prevailed in part and the Johnstons cannot be deemed the prevailing party. Therefore, we will not award attorney fees for this appeal.

### CONCLUSION

We reverse the district court's award to the Wilhelms for the amount by which the property's fair market value exceeded the secured debt. We also reverse the district court's decision disallowing any attorney fees incurred by the Johnstons as costs of the foreclosure sale, and we remand the matter for a determination of the amount of attorney fees reasonably incurred to accomplish the sale. The attorney fees thus allowed shall be added to the secured debt for purposes of determining the deficiency, if any. Accordingly, the judgment is vacated and the case is remanded for further proceedings consistent with this opinion. There being no prevailing party, no costs or attorney fees are awarded to either party on appeal.

Chief Judge SCHWARTZMAN and Judge PERRY concur.